UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NELLIE A. PEREZ, as Administrator of the
Estate of Gerard Wierzbicki,

                Plaintiff
        -v-                                      1:14-CV-950

COUNTY OF RENSSELAER, NEW YORK,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| BOSMAN LAW FIRM, LLC<br>Attorneys for Plaintiff<br>3000 McConnellsville Road<br>Blossvale, New York 13308 | AJ BOSMAN, ESQ. |
| NAPIERSKI, VANDENBURGH LAW FIRM<br>Attorneys for Defendant<br>296 Washington Avenue Extension<br>Albany, New York 12203 | SHAWN F. BROUSSEAU, ESQ.<br>DIANE LUFKIN SCHILLING, ESQ. |

DAVID N. HURD
United States District Judge

# MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION AND BACKGROUND

The case of plaintiff Nellie A. Perez ("Perez" or "plaintiff") against defendant the County of Rensselaer ("Rensselaer" or "the county") was decided through a trial by jury from Tuesday, January 14, 2020 until Friday, January 17, 2020. The jury was tasked with deciding whether the county and/or its Director of Probation, defendant Laura Bauer ("Bauer"), violated the rights of plaintiff's late husband, Gerard Wierzbicki ("Wierzbicki"). Plaintiffs alleged that defendants passed Wierzbicki over for several promotions within the county's

probation department, where he was employed as an officer, over several years. Defendants contended that Wierzbicki was not selected for promotions on a purely meritorious basis.

Perez brought two counts in the final complaint presented to the jury: (1) discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"); and (2) discrimination in violation of Wierzbicki's rights to equal protection under the law as guaranteed by the Fourteenth Amendment under 42 U.S.C. § 1983 ("§ 1983").

Upon the close of evidence on January 16, 2020, the jury was instructed and charged to begin their deliberations. Dkt. 94. The jury's instructions included that "Perez is not entitled to damages for any decision not to promote . . . Wierzbicki for which . . . Rensselaer has proven by a preponderance of the evidence that it would have made the same decision even if discrimination based on gender had not been a motivating factor." *Id.* at 14. During their deliberations, the jury submitted a note asking to be read the testimony of Daniel Mahoney ("Mahoney"). *See* Dkt. 92, p. 1. Mahoney was also a male employee of the County of Rensselaer's probation department. However, Mahoney received a promotion for which Wierzbicki was denied.

On January 17, 2020, the jury found for Perez on her claim of Title VII gender discrimination against Rensselaer but found for the county and Bauer on plaintiff's § 1983 claim. Dkt. 90, pp. 3-4. This is because to prevail on a § 1983 claim, plaintiff needed to prove that gender discrimination was the but-for cause of defendants' several decisions not to promote Wierzbicki, but Title VII claims require only proof that a prohibited characteristic was a "motivating factor" in an employment decision. *Naumovski v. Norris*, 934 F.3d 200, 213-14 (2d Cir. 2019).

However, the jury found that for at least one of Rensselaer's decisions not to promote Wierzbicki, the county had proven that it would have made the same decision even if it had not improperly considered Wierzbicki's gender. Dkt. 90, p. 3. Nevertheless, the jury returned a verdict for Perez and assigned $130,000 in damages: $30,000 compensatory damages for lost wages; and $100,000 compensatory damages for harm to reputation, pain, suffering, emotional distress, inconvenience, and/or loss of enjoyment of life. *Id.* at 5.

The jury was polled and the verdict was confirmed to be unanimous. Judgment was entered in Perez's favor on her Title VII claim, but for defendants on her § 1983 claim on January 21, 2020. Dkt. 91. By extension, defendant Bauer was dismissed from the case. *Id.* On January 31, 2020, Rensselaer made three post-trial motions: (1) for entry under Federal Rule of Civil Procedure ("Rule") 49(b)(3)(A) and Rule 58 of a judgment in accordance with the jury's specific answers rather than the jury's general verdict; (2) under Rule 50(b) for a renewed motion for judgment as a matter of law; (3) to alter or amend the judgment in favor of the county under Rule 59(e); or for a new trial on the Title VII claim under Rule 49(b)(3)(C), 50(b)(2) and 59(a). The motions being fully briefed, they will now be considered on the parties' submissions without oral argument.

## II. LEGAL STANDARDS

### A. RULE 49(b)(3).

Under Rule 49(b)(3), if a verdict form presents answers which are "consistent with each other but one or more is inconsistent with the general verdict, the court may:" (1) approve an appropriate judgment according to the specific answers, notwithstanding the general verdict; (2) direct the jury to further consider its answers and verdict; or (3) order a new trial. Fed. R. Civ. P. 49(b)(3).

### B. RULE 50.

Rule 50 "generally imposes a heavy burden on a movant, who will be awarded judgment as a matter of law only when 'a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Fed. R. Civ. P. 50(a)(1)). In making this determination, the court should review the record as a whole but "must draw all reasonable inferences in favor of the non[-]moving party," it "may not make credibility determinations or weigh the evidence," and it must "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

Where "the jury has deliberated in the case and actually returned its verdict in favor of the non-movant," the moving party's burden grows still heavier. *Cash*, 654 F.3d at 333 (internal citations and quotations omitted). In that case, the court must "give deference to all credibility determinations and reasonable inferences of the jury[.]" *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008) (internal quotation marks and citation omitted). In light of these requirements, a court may only set the verdict aside if there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise or conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair[-]minded [persons] could not arrive at a verdict against [it]." *Id.*

### C. **RULE 59.**

Under Rule 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues . . . to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). That list of reasons has historically included inconsistent verdicts. *See Cash*, 654 F.3d at 339-40.

4

In reviewing a Rule 59 motion, a court "may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner . . . ." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012). That said, the court must "exercise [its] ability to weigh credibility with caution and great restraint," and "'[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial.'" *Id.* (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992)).

A motion for a new trial should ordinarily be denied "'unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir. 1998) (quoting *Lightfood v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997)). A court's decision whether or not to grant a new trial under Rule 59 is a matter within its discretion. *See Cash*, 654 F.3d at 339-40.

### III.   DISCUSSION

Although Rensselaer raises multiple bases in its request for relief, each of them turn on its contention that the jury verdict was inconsistent because the jury assessed damages despite its finding that the county had proven that it would have made the same decision not to promote Wierzbicki regardless of his gender on at least one occasion.

If a party raises a potential inconsistency in the verdict after the jury has been discharged, the court has an obligation to "attempt to harmonize" that potential inconsistency "if it is possible under a fair reading" of the verdict form. *Anderson v. Cty. of Suffolk*, 621 F. App'x 54, 55 (2d Cir. 2015) (summary order) (citing *Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 891 (2d Cir. 1988)).

5

In reviewing a verdict sheet for potential inconsistencies, a "reviewing court must adopt a view of the case, if there is one, that resolves any seeming inconsistency." *Harris v. Niagara Mohawk Power Corp.*, 252 F.3d 592, 598 (2d Cir. 2001) (internal citations and quotation marks omitted). By contrast, if a verdict is "ineluctably inconsistent" and cannot be "harmonized rationally," then the Seventh Amendment's protected jury right demands the verdict be set aside. *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004). In interpreting a verdict sheet, it must be "read in conjunction" with the jury instructions. *See Zaratzian v. Abadir*, 694 F. App'x 822, 824 (2d Cir. 2017) (summary order).

However, "[i]t is well[-]established that a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 83 (2d Cir. 2006). The only exception to this waiver is if the error is fundamental, or "so serious and flagrant that it goes to the very integrity of the trial." *Lore v. City of Syracuse*, 670 F.3d 127, 159-60 (2d Cir. 2012).

In proving a claim for discrimination under Title VII, the plaintiff bears the burden of showing that he: "(1) is a member of a protected class; (2) was qualified for the position at issue; (3) was denied the position; and (4) that the circumstances of the adverse employment decision give rise to an inference of discrimination." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003).

Once the plaintiff meets their initial burden, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the defendant does so, "the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for . . . discrimination . . . ." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). "[T]he employee's [admissible] evidence

6

must show circumstances that would be sufficient to permit a rational finder of fact to infer that the [employer's] employment decision was more likely than not based in whole or in part on discrimination." *Id.*

A plaintiff need not prove that discrimination was the but-for cause of the employment action, but instead need only prove that "the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013). That is to say, it is sufficient for the plaintiff to prove that discrimination was a motivating factor in the defendant's decision. *Naumovski*, 934 F.3d at 213-14.

On the face of it, there is room for a defendant to prove both a non-pretextual reason for making an employment decision while a plaintiff nevertheless proves that discrimination was a motivating factor. To address such circumstances, Congress created the "mixed-motive" defense. *See Natofsky v. City of New York*, 921 F.3d 337, 347 (2d Cir. 2019), *petition for cert. docketed*, No. 19-732. Under that defense, if a plaintiff proves that discrimination was a motivating factor in the defendant's decision, but the defendant proves that it would have made the same decision regardless of the impermissible motivating factor, the plaintiff is entitled only to declaratory relief, and cannot attain damages. *Id.*

Essentially, Rensselaer argues that the jury's conclusion that it had successfully proven in at least one instance that it would not have promoted Wierzbicki even if his gender had not been a motivating factor renders the jury's finding of damages improper. That argument fails.

Were there a single instance in which Wierzbicki applied for a promotion and was denied for reasons that he claimed to be discriminatory, the verdict would of course have been inconsistent and the jury's assessment of damages would need to be revisited. That is

7

not the case. Instead, Perez alleged and proved several instances in which Wierzbicki applied for a promotion and was denied. Each of these was a discrete employment action. Each on its own could have substantiated her claims and allowed for an assessment of damages. Thus, the verdict sheet's second question asked if Rensselaer had proven the mixed-motive defense in "*any* of its decisions not to promote" Wierzbicki. Dkt. 90, p. 3 (emphasis added). Only proving this defense on one of the several different decisions not to promote Wierzbicki would reduce the damages to which plaintiff was entitled, but it would not eliminate them.

Against this backdrop, and given the verdict sheet, the instructions, and the jury's request to hear Mahoney's testimony read back to them, there is at least one clear reading of the verdict sheet in which the jury correctly followed its instructions and the law. Namely, the jury could have decided that because Mahoney, a male, was promoted when Wierzbicki was not, Rensselaer had proven by a preponderance that it would have made the same decision on that day even if Wierzbicki had been female. The jury could have similarly found that in every other instance, the county failed in that proof.

As a result, Rensselaer would have been entitled to an elimination in damages for this one promotion, but not for every other choice not to promote him. The resulting reduction in the amount of damages would have been minimal, because the emotional damages and lost wages would not have been meaningfully altered by this one decision for which defendants have proven a defense. Wierzbicki still would not have received the pay raise at any point before or after Mahoney was promoted, despite having had several opportunities to be promoted. Instead, the only reduction in damages that would have been required would be that Perez could not recover for the timeframe between Mahoney's promotion and the next time that Wierzbicki was denied a promotion.

8

The verdict sheet did not specifically require the jury to determine whether Rensselaer had proven that it would have made the same decision for each choice not to promote Wierzbicki because such a verdict form would have been ponderously complex. If this defense were determined individually, there would be no reason not to have liability determined individually for every claim as well, and the risk of an inconsistent verdict would have only been magnified by including dozens of special questions.

Of course, the verdict sheet could alternatively have required that the jury only answer "yes" to Question 2 if defendant had proven *all* of the decisions not to promote Wierzbicki. But Rensselaer would have been well within its rights to object to such a verdict form. presenting this defense as an all-or-nothing proposition across every decision would have only confused the jury after it had been instructed that "Perez is not entitled to damages for *any decision* not to promote . . . Wierzbicki for which . . . Rensselaer has proven by a preponderance of the evidence that it would have made the same decision even if discrimination based on gender had not been a motivating factor." Dkt. 90, p. 14 (emphasis added). It was the better course to have a final verdict subject to interpretation rather than a verdict sheet that seemed to contradict the jury instructions at the expense of the county's defense.

This Court determined that the best solution was to include a special question contemplating the same decision defense, so that the jury would need to consider it in the course of reaching its verdict, while trusting the jury to follow its instructions in allocating damages for each decision. Having reviewed the verdict and Rensselaer's objections, there is no reason to doubt that the jury did precisely that, and every reason to have confidence that they considered, on a decision-by-decision basis, the applicability of the defense and the

resulting reduction of damages. The county's motions, all hinging on this alleged defect, must therefore be denied.

After all, if there is no inconsistency between the specific answers and the general verdict, this Court entered the appropriate verdict in the first place and need not change it now. Similarly, Rensselaer has nowhere articulated any other insufficiency in the facts presented to the jury sufficient to preclude a fair-minded juror from arriving at the verdict as rendered. *Brady*, 531 F.3d at 133. Nor has an assessment of the weight of the evidence and the credibility of the witnesses suggested that the jury has reached a seriously erroneous result. *Atkins*, 143 F.3d at 102.

Moreover, in addition to failing on the merits, Rensselaer has waived their right to challenge the verdict in post-trial motions. *Kosmynka*, 462 F.3d at 83. After all, it did not raise an objection of the same flavor as its present contentions at any point: not to the verdict form, the jury instructions, or the final verdict prior to the discharge of the jury. And especially because as discussed above there was no error at all in the jury's verdict, the county certainly cannot prove that the verdict was a "fundamental error" sufficient to excuse their failure to object before now. *See, e.g.*, *Perks v. Town of* Huntington, 234 F. App'x 8, 10 (2d Cir. 2007) (finding no fundamental error where jury found that rejection of employer's sexual advances resulted in tangible employment action but defendant was nevertheless not liable). Thus, the county's post-trial motions must be denied in their entirety.

## IV.  **<u>CONCLUSION</u>**

Rensselaer objects now to what it terms an inconsistency in the verdict form, despite the simple truth that it at no point objected to the verdict form or the result it now contends is inconsistent. Moreover, its arguments in favor of dismissal misunderstand the nature of this case. Perez's claims did not involve a single transaction. They did not turn on one, individual

pass over Wierzbicki's credentials that resulted in a refusal to promote him based on his gender. Rather, plaintiff's claims involved a series of denials and multiple distinct rejections, over a prolonged period of years, each involving varied motivations and circumstances. Thus, each choice the county made needed to be evaluated independently.

Therefore it is of no moment that the jury awarded damages despite its finding that on at least one of those multiple occasions, Rensselaer met its burden of proving that it would have made the same decision not to promote Wierzbicki regardless of its impermissible consideration of his gender. There were several other instances to choose from, each of which was capable of injuring Wierzbicki. The jury, being duly instructed that it could not apply damages for any of the denied promotions for which the county proved it would have made the same choice regardless of his gender, could plausibly have looked at the record—and especially at Mahoney's promotion despite being a male—and determined that damages were appropriate for several, but not all, of the denied promotions. The award of damages despite the jury's finding on Question 2 that for one of the decisions not to promote Wierzbicki the county had proven its defense is thus not inconsistent with the general verdict, and defendant is entitled to no relief.

Therefore, it is

ORDERED that

1. Defendants' Rule 58 motion for a judgment according to the jury's specific answers, notwithstanding the general verdict, is DENIED;

2. Defendants' renewed Rule 50(b) motion for judgment as a matter of law is DENIED;

3. Defendants' motion to alter or amend the Judgment under Rule 59(e) is DENIED;

4. Defendants' motion for a new trial on the Title VII claim is DENIED;

5. Plaintiff may move for fees on or before Wednesday, March 4, 2020; and

6. Defendant may oppose plaintiff's motion for fees on or before Wednesday, March 18, 2020.

IT IS SO ORDERED.

Dated: February 19, 2020
Utica, New York.

David N. Hurd
U.S. District Judge