UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NELLIE A. PEREZ, as Administrator of the
Estate of Gerard Wierzbicki,

                Plaintiff

      -v-                           1:14-CV-950

COUNTY OF RENSSELAER, NEW YORK,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

BOSMAN LAW FIRM, LLC            AJ BOSMAN, ESQ.
Attorneys for Plaintiff
3000 McConnellsville Road
Blossvale, New York 13308

NAPIERSKI, VANDENBURGH LAW FIRM    SHAWN F. BROUSSEAU, ESQ.
Attorneys for Defendant              DIANE LUFKIN SCHILLING, ESQ.
296 Washington Avenue Extension     THOMAS J. O'CONNOR, ESQ.
Albany, New York 12203

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION AND ORDER

       Plaintiff Nellie A. Perez ("Perez" or "plaintiff") brought two claims against defendant the County of Rensselaer ("Rensselaer" or "the county") which were ultimately decided by a jury trial that began on Tuesday, January 14, 2020, and ended on Friday, January 17, 2020.  The jury was tasked with deciding whether the county and/or its Director of Probation, defendant Laura Bauer ("Bauer"), discriminated against plaintiff's late husband, Gerard Wierzbicki ("Wierzbicki"), by refusing to promote him within the probation department because he was male.  Plaintiff sought recovery under two statutes:  (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"); and (2) 42 U.S.C. § 1983 ("§ 1983").

On January 17, 2020, the jury found for Perez on her Title VII claim against Rensselaer but found for the county and Bauer on plaintiff's § 1983 claim. Accordingly, the jury returned a general verdict for Perez and assessed $130,000 against the county in damages: $30,000 compensatory damages for lost wages; and $100,000 compensatory damages for harm to reputation, pain, suffering, emotional distress, inconvenience, and/or loss of enjoyment of life. Accordingly, judgment was entered against the county in the sum of $130,000 on January 21, 2020.

On January 31, 2020, Rensselaer moved to set aside the verdict.[1] The county argued that the jury's specific findings in its favor, including finding that it had proven its affirmative defense that it would have made "any" of the same decisions not to promote Wierzbicki in the absence of impermissible considerations of gender, were inconsistent with a damages award. On March 9, 2020, that motion was denied, because the jury's specific findings reflected only that the county would have made the same decision regardless of gender for at least one of several decisions not to promote Wierzbicki.

On March 31, 2020, Perez moved for attorney's fees and costs. On April 2, 2020, plaintiff requested to update the list of expenses and fee assessments she initially provided with her motion. Because plaintiff's request was prompt, and her initial showing of fees was substantially complete, her substituted statement will be considered. Rensselaer appealed the denial of their motion to set aside the verdict on April 7, 2020.[2] Finally, on April 14, 2020, more than a week after the deadline to oppose plaintiff's fee request had passed, Rensselaer submitted a response in opposition to the fee request. In acknowledgement of the ongoing

---

[1] Plaintiff's § 1983 claim was her only claim against Bauer, and thus Bauer was dismissed from the case.

[2] Despite the pendency of the appeal, courts in this District have found that an application for attorney's fees is a collateral matter to an appealed judgment, and as such courts retain jurisdiction to decide the propriety of a fee request while a decision is on appeal. *Noga v. Potenza*, 2002 WL 34945085, at *1-2 (N.D.N.Y. Dec. 5, 2002) (finding no lack of jurisdiction to award attorney's fees though appeal was pending). There is no apparent reason not to follow those cases' lead, and thus this Court will consider plaintiff's fee request notwithstanding the pendency of the county's appeal.

pandemic, that opposition will still be considered.  However, the county is cautioned that such a delay without even a request for an extension jeopardized its opposition and should be avoided in the future.  In any event, plaintiff's request for fees being fully briefed, it will now be considered on the parties' submissions without oral argument.

Under 42 U.S.C. § 2000e-5(k), a prevailing party for a Title VII claim may, at the court's discretion, recover costs, reasonable attorney's fees, and reasonable expert fees. "Both [the Second Circuit] and the Supreme Court have held that . . . the product of a reasonable hourly rate and the reasonable number of hours required by the case . . . creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  The resulting product "should be in line with the rates prevailing in the community for similar services by attorneys of comparable skill, experience, and reputation." *Kapoor v. Rosenthal*, 269 F. Supp. 2d 408, 412 (S.D.N.Y. 2003) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997)).

Naturally, this calculation depends on the hourly rates employed in the district in which the reviewing court sits.  *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).  Courts in this district have recently determined hourly rates of:  between $250 and $350 for partners; between $165 and $200 for associates; and between $80 and $90 for paralegals, to be reasonable.  *Deferio v. City of Syracuse*, 2018 WL 3069200, at *3 (N.D.N.Y. June 21, 2018).

Once the typical hourly rate is established, the court should "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190.  Those

3

factors include:  (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill level required by the case; (4) the preclusion of employment with other clients due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the extent of involvement in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989)).

Ultimately, a fee is presumptively reasonable if it is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons*, 575 F.3d at 174 (internal citations and quotation marks omitted).

Perez identifies five people whose fee she seeks to recover:  (1) senior attorney A.J. Bosman, Esq. ("Ms. Bosman") at an hourly rate of $350; (2) associate Daniel W. Flynn, Esq. ("Mr. Flynn") at an hourly rate of $220; (3) senior paralegal Anthony Fernicola ("Fernicola") at an hourly rate of $125, and (4) paralegals Sarah Clancy and Nicole Cruz ("Clancy and Cruz") at an hourly rate of $100.

At the outset, Perez's attorney's requested fees for Mr. Flynn, Fernicola, Clancy, and Cruz all exceed the amounts that have customarily been found reasonable in this district. *Deferio*, 2018 WL 3069200, at *3 (setting high-end hourly fee for associates at $200, and at $90 for paralegals).  Although she makes arguments in favor of exceeding the standard fee rates for this district, they are are less than persuasive.  First, the case she cites in support of awarding $225 for Mr. Flynn only awarded the standard $200 hourly fee to an associate, and

in fact rejected a request for $215 per hour, which hardly supports her request for a greater sum. *Pope v. Cty. of Albany*, 2015 WL 5510944, at *10-11 (N.D.N.Y. Sept. 16, 2015).

Second, Perez cites a case purporting to stand for the principle that paralegals have been awarded fees at a rate above $100 per hour.   That citation is less than helpful, however, because it only includes the name of one party, apparently *Bonner*.   There is no reporter number, or full case name, or even court, and there is no other reference to the case in the record.  A citation which affords neither credit nor a means of verifying its truth or accuracy can hardly be expected to carry enough argumentative weight to overcome the consistent law of this district.  Her third and final argument, this time in support of an award of $100 per hour for Clancy and Cruz, cites in its support a state law case, which is of no use to a federal court in a fee inquiry.

Thus, each of Perez's fee requests except for that of Ms. Bosman is excessive and unreasonable.  Mr. Flynn's rate must therefore be reduced to $200 per hour, Fernicola's to $90 per hour, and Clancy's and Cruz's to $80 per hour.  Mr. Flynn's rate of $200 reflects his five years of experience, which is among the high end for an attorney who is nevertheless still considered an associate.  *Pope*, 2015 WL 5510944, at *11 (noting that $200 per hour is appropriate for an associate with more than three years' experience).  Concordantly, Fernicola's elevated rate of $90 per hour above Clancy and Cruz's rate of $80 reflects his eighteen years of experience, which neither Clancy nor Cruz can match.

On the other hand, though Ms. Bosman's requested fee rate is within the range of proper fees in this district, it is still too high.  To Ms. Bosman's credit, this case involved a prolonged dispute which was only finally resolved by trial.  *Arbor Hill*, 522 F.3d at 186 n.3.  It also featured unique complexities as a gender discrimination case brought by a male.  *Id.* Moreover, she managed to win a substantial verdict against one of the two defendants

despite those complexities. *Id.* Thus, a fee above the floor in this district of $250 for a partner-caliber attorney is appropriate. *Deferio*, 2018 WL 3069200, at *3.

However, a fee at the $350 ceiling is not required by these facts either. Ms. Bosman was hardly precluded from pursuing other cases and clients by her work on this case. *Arbor Hill*, 522 F.3d at 186 n.3. Similarly, although Perez won a verdict against Rensselaer, Bauer was not found liable, and even the county escaped liability as to plaintiff's § 1983 claim. *Id.* Considering all the relevant factors, the Court finds a fee at a rate of $300 per hour to be appropriate for Ms. Bosman.

In terms of the hours spent on the case, Rensselaer argues that Ms. Bosman's fee request is excessive on two grounds. First, the county argues that the fee request improperly includes several "block" time entries, in which Ms. Bosman lumps several discrete acts together into one large chunk of time. Block-billing obscures the fee request, which makes it far harder for courts to assess whether that request is reasonable. *Stair v. Calhoun*, 722 F. Supp. 2d 258, 271 (E.D.N.Y. 2010). As a result, courts will often assess blanket fee reductions where a party requesting fees engages in this practice. *See, e.g.*, *id.* (cutting billed hours by 10% where moving party block billed); *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 314 (S.D.N.Y. 2009) (imposing 15% reduction for block billing and noting that such a reduction was "on the low end of the scale").

As just one example, between July 25 and 29 of 2014, Ms. Bosman's affidavit presents three block entries. Two block entries cover that entire span in which she recount both her and Fernicola drafting, reviewing, and revising the complaint, as well as conferences between Ms. Bosman, Wierzbicki, and Fernicola regarding the complaint. *Id.* Another dated July 29 allotted a full hour to filing the complaint, preparing the summonses, preparing the civil cover sheet, and reviewing the acknowledgement of the electronic filing. *Id.* Because there are

6

several such instances of block billing throughout Ms. Bosman's affidavit, and to encourage greater care in timekeeping in the future, the hours claimed in the affidavit will be reduced by 10% across every attorney and paralegal.

Additionally, Rensselaer argues that Ms. Bosman's affidavit improperly counts time in fifteen-minute intervals, rather than the six-minute interval favored by courts in this Circuit. *See, e.g.*, *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 441 (S.D.N.Y. 2012).  However, not only are there several instances in which the affidavit does, in fact, count time in a six-minute interval, but, in any event, courts tend not to reduce a fee request for measuring time by the quarter hour.  *See id.* at 441-42 (declining to impose reduction on hours based on quarter-hour billing and identifying trend among courts not to do so unless coupled with vague or excessive fee requests).

Rensselaer argues that as a result of Ms. Bosman's quarter-hour billing practice, the affidavit overestimates the time that several tasks required, including multiple instances of scanning documents taking a full quarter hour.  Document scans are routinely part of block-billed entries, however, and it would be unjust to count those errors against Perez twice.  The same holds true for the county's objections to the affidavit's inclusion of clerical acts such as updating calendars.  Although not generally recoverable, the clerical acts the county complains of routinely occur in blocked billings and are thus already contemplated by the 10% reduction.  *See Deferio*, 2018 WL 3069200, at *6 (noting that basic scheduling functions are clerical and not compensable in application for attorney's fees).  Thus, no further reduction in the hours requested is warranted.

As a result, Perez may recover:  (1) $41,836.50, or $300 per hour for 139.455 hours for the work of Ms. Bosman; (2) $11,475.00, or $200 per hour for 57.375 hours for Mr. Flynn; (3) $16,710.30, or $90 per hour for 185.67 hours for Fernicola; and (4) $1,526.40, or 19.08

hours at a rate of $80 per hour for Clancy and Cruz, for a total amount of attorney's fees of $71,548.20.

Perez has also requested reimbursement for Ms. Bosman, Mr. Flynn, and Fernicola's hours spent traveling to and from court proceedings and depositions. An attorney's reasonable travel time is frequently recoverable in an application for fees. *K.F. v. New York City Dep't of Educ.*, 2011 WL 4684361, at *1 (S.D.N.Y. Oct. 5, 2011). In allowing for travel expenses, however, "[c]ourts in this Circuit regularly reduce attorney's fees by 50% for travel time." *Trs. of N.Y. Oil Heating Ins. Fund v. Anchor Tank Lines Corp.*, 2011 WL 767162, at *5 (S.D.N.Y. Mar. 4, 2011) (citing *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 373 (S.D.N.Y. 2005).

Perez requests travel time for both Ms. Bosman and for Mr. Flynn for the purposes of their travel between Albany and Rome, New York for the purposes of depositions, mediations, and court proceedings. These requests, for two trips each at four total hours per trip, are appropriate and commensurate with the amount of time the trip would likely take. Thus, plaintiff may recover fees for eight hours of travel time each for Ms. Bosman and Mr. Flynn, at half-rates of $150 and $100, respectively.

However, that is all the travel time that Perez may recover. Plaintiff's recovering for her attorneys' round-trip commutes from Ms. Bosman's office in Rome to the Utica courthouse would strain the word "reasonable" under the best of circumstances. After all, travel to and from court usually happens outside of standard business hours, especially for plaintiff's claimed travel for trial. In addition, a reasonable client would scarcely expect to pay for routine trips of such a short distance. *C.f. K.F.*, 2011 WL 4684361, at *1 (noting that reasonable client would not expect to pay for excessive five-hour travel time and describing

travel time as recoverable for "travel to and from depositions, witness interviews or site inspections *in a distant location*" (emphasis added)).

Of particular concern in Ms. Bosman's request for travel time is the readily apparent overestimation of the time she and Fernicola spent traveling to court.  The affidavit's time log for the trips to and from Utica allege that Ms. Bosman and Fernicola would devote an hour and a half to this trip every time they would make it.  That commute is one of deep familiarity to this Court and should have taken them at most half that time.

Although it is of course possible that road conditions or other travel hiccups might on occasion distend the amount of time spent on any commute, it is doubtful that every single trip to this Court would take so much longer than it should be expected to take.  Thus, because the time Perez's attorneys claim to have spent traveling to the Utica courthouse is demonstrably excessive, plaintiff will not be permitted to recover at all for this portion of her travel time request.  Plaintiff may thus only recover time spent traveling in the amounts of: (1) $1,200.00 for Ms. Bosman's two round trips to Albany; and (2) $800 for Mr. Flynn's two round trips to Albany, bringing her total grant of attorney's fees to $73,548.20.

Regarding costs, a plaintiff may only recover identifiable, out-of-pocket disbursements relating to filing fees, process servers, postage, and photocopying.  *See Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, 2019 WL 312149, at *12 (E.D.N.Y. Jan. 3, 2019).  Perez's requested cost disbursements are mostly reasonable, because each entry in her expense list accounts for filing fees, service of process, postage, mileage, tolls, or other discrete, identifiable expenses.

However, some closer attention must be paid to Perez's request for expert fees in the amount of $2,300.  Typically, courts in this Circuit will assess the reasonableness of an expert fee along similar lines to those used to scrutinize attorney's fees, because the

9

language of 42 U.S.C. § 2000e-5(k) groups those two means of recovery together as distinct from—but part of—the costs that a prevailing party can recover.  *See, e.g.*, *Matteo v. Kohl's Dep't Stores, Inc.*, 2012 WL 5177491, at *5 (S.D.N.Y. Oct. 19, 2012) (collecting cases); *see also* 42 U.S.C. § 2000e-5(k) (noting that prevailing party in Title VII claim may recover "a reasonable attorney's fee (including expert fees) as part of the costs").  The party seeking reimbursement for expert fees of course bears the burden of proving reasonableness. *Penberg v. HealthBridge Mgmt.*, 2011 WL 1100103, at *15 (E.D.N.Y. Mar. 22, 2011).

If the moving party does not provide sufficient evidence to support the reasonableness of her requested fee, a court must turn to its own discretion in assessing whether that fee is reasonable.  *New York v. Solvent Chem. Co., Inc.*, 210 F.R.D. 462, 468 (W.D.N.Y. 2002). Much like when a submission involves block billing, if the moving party provides absolutely no evidence required to assess a fee's reasonableness, a court may, at its discretion, reduce the requested expert fees by a proportion it deems appropriate.  *Penberg*, 2011 WL 1100103, at *15 (reducing expert fees by 15% because plaintiff had failed to provide baseline rates charged by similar experts in the area).

Perez has failed to provide any indication of what a typical hourly rate would be for an expert similar to Dr. Bashkoff, the expert for whom she requests fees.  Indeed, she has not even provided the number of hours that Dr. Bashkoff billed to produce the fee she asks Rensselaer to pay.  In other words, plaintiff sheds precisely no light on how to determine whether the fee she has requested is reasonable.  Moreover, given the liberties that plaintiff's billing requests have already taken in terms of the time spent traveling and the appropriate fee rates in this district, some scrutiny of Dr. Bashkoff's fee is in order.  Therefore, plaintiff's asserted fee for Dr. Bashkoff of $2,300.00 must be reduced by 25% to $1,725.00.  Thus, plaintiff may recover only $4,930.33 in costs.

Finally, Perez argues that she should receive an upward departure from her reasonable fee request to encourage counsel to continue to take discrimination claims, especially those like the present case involving novel circumstances.  Plaintiff cites to no law to support her entitlement to such an increase.  Moreover, her arguments do not hold up to scrutiny.  If encouraging attorneys to take discrimination cases was a sufficient motivator to justify an upward departure, then upward departures would be appropriate in virtually every Title VII claim, or other discrimination claim for that matter.  It simply cannot be that an upward departure is merited in such a broad swath of cases.

Second, Perez's argument that the novelty of her case should entitle her to an upward departure is similarly unavailing.  In *Blum v. Stenson*, the first case in which the Supreme Court recognized that upward departures may be appropriate for some fee requests under § 1983's analogous fee provision, 42 U.S.C. § 1988, the Court expressly rejected the argument that the novelty and complexity of a case is a justification for an upward departure. 465 U.S. 886, 898-99 (1984).  Instead, the novelty and complexity of a case is properly addressed by the number of hours expended by the attorney.  *See id.*  As a result, the large number of hours spent on this case more than adequately compensates plaintiff's counsel for its complexity.  Thus, no upward departure is appropriate.  Plaintiff shall recover: (1) $71,548.20 in attorney's fees; (2) $2,000 in travel time for Ms. Bosman and Mr. Flynn; and (3) $4,930.33 in other costs, for a total of $78,478.53.

Therefore, it is

ORDERED that

1. Plaintiff's motion for attorney's fees and costs is GRANTED; and

2. Plaintiff is entitled to recover $78,478.53 from Rensselaer in addition to the $130,000 verdict.

11

The Clerk of the Court is directed to enter a second judgment in the sum of $78,478.53

accordingly and close the file.

IT IS SO ORDERED.


Dated:  April 24, 2020
        Utica, New York.

David N. Hurd
U.S. District Judge